IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
WESTERN DIVISION

| | | |
|---|---|---|
| LINDA HILL, | * | |
| | * | |
| Plaintiff, | * | |
| | * | |
| vs. | * | No. 4:06CV00962 SWW |
| | * | |
| ARKANSAS DEPARTMENT OF | * | |
| EDUCATION, ET AL., | * | |
| | * | |
| | * | |
| Defendants. | * | |

**Memorandum Opinion and Order**

Linda Hill brings this suit against the Arkansas Department of Education ("ADE"); T. Kenneth James; Annette Barnes; and Ed Jones alleging discrimination on the basis of race, sex, and retaliation. Before the Court is a motion for summary judgment filed by defendants to which plaintiff responded. After careful review of the motion, response, briefs, statements of facts, and exhibits, the Court finds the motion should be granted.

**Background**

Hill is a black female who began her employment with the ADE in 1998. On February 4, 2002, she filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC") alleging race discrimination and unlawful retaliation. In this charge, Hill complained about written reprimands she claims were based on unfounded complaints. On January 10, 2006, after Hill received several written reprimands and was denied a promotion, Hill filed another EEOC charge, alleging race and gender discrimination and retaliation. On May 15, 2006, the EEOC issued a Dismissal and Notice of Rights regarding the January 10, 2006 charge. Hill filed her original

complaint in federal court on August 14, 2006, and an amended complaint on September 1, 2006. After she was terminated on December 1, 2006, Hill filed an EEOC charge alleging her termination was based on unlawful discrimination and retaliation. On December 15, 2006, the EEOC issued a Dismissal and Notice of Rights, and on March 5, 2007, Hill filed a second amended complaint, adding the claim of unlawful termination.

Since 2003, and at the time of her termination, Hill was a supervisor in the ADE's Division of Learning Services ("DLS"), School Improvement Services section ("SIS"). The SIS is one of two sections within the DLS, and within SIS there are three operational units. One of those units, and the one in which Hill worked, is Arkansas Comprehensive School Improvement Planning ("ACSIP"). The mission of SIS is to ensure that all children in the state have access to a quality education by providing educators, administrators and staff with leadership, resources, and training. ACSIP fulfills this mission through a wide variety of services. For example, ACSIP provides technical assistance to school district personnel, conducts training and workshops to assist districts in determining curricular and instructional practices, uses and allocates state and federal resources for school improvement, approves school improvement plans, and manages oversight of school improvement grants. SIS/ACSIP is staffed by twenty supervisors who provide training and technical assistance for development of comprehensive school improvement plans. ACSIP supervisors are assigned territories within the state and frequently make in-person visits.

In August 2005, separate defendant T. Kenneth James, Commissioner of the ADE, appointed separate defendant Annette Barnes, a black female, coordinator of SIS. Barnes selected separate defendant Ed Jones, a white male, to be the lead supervisor of the ACSIP unit. On January 1, 2006,

Jones was hired to fill the position of unit leader of ACSIP. Hill was among other candidates interviewed for the position, but Barnes recommended that Jones be hired.

Barnes was Jones' direct supervisor from mid-September 2005 until Jones resigned on July 8, 2006. Jones was Hill's direct supervisor from January 1, 2006, until July 8, 2006. In October 2006, Bernice Martin-Russell, a black female, became the ACSIP unit leader and Hill's supervisor.

In her second amended complaint, Hill alleges that after she filed an EEOC charge in 2002,

> she was subjected to multiple acts of racial and gender discrimination and retaliation. With Jones' input, Barnes issued written reprimands for insubordination to Plaintiff on December 15, 2005, and January 4, 2006. Both Barnes and Jones denied her access to meetings, travel outside the state, leadership roles, and forced her to work in isolation. These acts hindered her professional development and so negatively altered the terms and conditions of her employment. Plaintiff also sought and was denied promotions after she filed her EEOC complaint in 2002.

Second Am.Compl. ¶ 4. Hill claims that after filing an EEOC claim in January 2006,

> she continued to experience racial and gender discrimination and unlawful retaliation. On April 26, 2006, using Plaintiff's previous reprimands as an excuse, Defendant Jones placed her on ninety-days probation with the threat of termination. Barnes and Jones also denied her access to meetings that would provide professional development to her. Furthermore, Plaintiff sought and was denied a promotion since filing her EEOC charge in 2006.

*Id.* at ¶ 6.

In order to ensure that state resources are being used properly, Barnes and Jones were charged with ensuring that the ACSIP personnel communicate the details of their daily schedules. They were also responsible for ensuring that ACSIP supervisors accurately accounted for their reimbursable travel and their time performing job related duties when out of the office. These expectations for taking leave, communicating schedules and providing accurate accounting of meetings and providing a correct and accurate travel reimbursement had been explained verbally

and in writing to Hill on numerous occasions and much of it was explicitly stated in the employee handbook and written job description.

From the Fall of 2005 until Jones' promotion to unit leader, Hill received reprimands from Barnes, allegedly for insubordination in connection with failure to account for her time at work according to SIS rules and procedures. On November 22, 2005, Hill did not return to work after a meeting adjourned early. Hill says she went from the meeting to a school to provide technical assistance. Barnes instructed Hill to take a half day of annual leave for failing to return to work. Hill did so but then grieved the matter and her leave was restored after it was determined that she was actually working the entire day.

Defendants claim that on December 9, 2005, Hill attended a job interview during business hours but did not turn in a leave slip for the personal activities she conducted on ADE time. On December 14, 2005, Hill was three hours late to work because of car problems. She did not submit a leave slip for that time until January 4, 2006. On December 15, 2005, Hill did not report to work. Defendants state that when contacted at 9:30 a.m. that morning, Hill said she was taking annual leave. Hill says she took sick leave.

On December 20, 2005, Barnes gave Hill a written reprimand for failing to file leave for the November 22, 2005, missed work, and a warning for the remaining incidents, with the instruction to file the appropriate leave requests by January 3, 2006. Some time later, Hill brought in a statement verifying her presence at the school on the afternoon of November 22, 2005, and her leave was reinstated. Hill, however, was made aware at least as early as September 29, 2005, of the requirement to "change your calendar when you make a change" and to "enter those changes" and

that "this is especially important for the times after your lunch hour." Defs.' Statement of Facts, ¶ 20.  Hill failed to file the appropriate leave requests for December 14, 2005, by January 3, 2006, as instructed by Barnes in the December 20 reprimand, and received an additional reprimand for insubordination on January 4, 2006, which referenced the December 20th letter, for refusal to comply with policy and directives.  The January 4 reprimand also contained a warning that failure to comply with the directive regarding leave for the December 14, 2005 missed time would result in Hill's suspension without pay until she complied with the directive.  Hill eventually turned in all the requested leave.

Hill testified that she did not believe that she should turn in leave for the three hours she dealt with her car problems because LaDonna Spain, a white woman at ADE, had not used time when she brought her car to Little Rock for repair prior to coming into the main office to work.  Hill acknowledges LaDonna Spain might have been on time to work, and admits that Spain went to get her car during her lunch break.  According to Jones, Spain employee arrived in the office on time and worked all of her hours there until her lunch break when she picked up her car and returned to the satellite office to complete her work day.  *Id.*, ¶ 22.

On April 17, 2006, after he became her supervisor, Jones wrote Hill a letter of reprimand for insubordination.  He claimed that on February 10, 2006, she was directed verbally to complete her outlook calendar for the upcoming week February 13-17, 2006, and failed to complete the calendar until Friday, February 17.  On February 13, 2006, Hill was asked by e-mail to complete her outlook calendar for that week, with an emphasis on explaining a workshop she planned to attend in North Little Rock on February 15, 2006.  She failed to do so until Friday the 17th.  On February 14, 2006,

Hill was advised by e-mail not to attend the workshop on February 15, 2006, and to report to the office. Hill attended the workshop because, she says, she had not read her e-mail. Jones' letter of April 17, 2006, also referenced Hill's failure to comply with a December 15, 2005, memorandum from Barnes that Hill take appropriate leave anytime she was not working on official business. He said she failed to take leave after attending the North Little Rock workshop on February 15, 2006, which ended at 1:30 p.m. On March 1, 2006, Jones said Hill was required to take three hours appropriate leave for time not at her workstation and was reminded of the policy to submit leave slips when not on official business. Defs. Statement of Facts, Ex. 10. Hill did not sign Jones' letter acknowledging she received and read it.

On April 26, 2006, Jones documented a meeting he held with Hill and Barnes on April 17, 2006. At the meeting, he reviewed the items discussed with Hill, including the various instances of alleged insubordination that occurred in February 2006, as well as an incident on March 2, 2006, when Hill attended a workshop in Beebe, Arkansas. The workshop ended at 1:45 p.m. but Hill did not return to her workstation in Little Rock and did not submit a leave form. She later submitted a travel reimbursement request for mileage from Beebe to her workstation in Little Rock which Jones claims was improper because Hill did not return to work. Jones placed Hill on 90-days probation, from April 27, 2006, through July 25, 2006. Hill did not sign off on the notification of her probationary period. *Id.*, Ex. 11.

On May 12, 2006, Hill received an "unsatisfactory" rating on her 2006 evaluation, which covered the period from August 24, 2005 to April 30, 2006. *Id.*, Ex. 30. On June 27, 2006, Jones prepared an interim review of Hill's probation in which he catalogued alleged violations to the

conditions of her probation. Those violations included not promptly returning to her work station, not maintaining a eight-hour work day and returning to her work station if her off-site duties are completed prior to the completion of the work day, not maintaining a current, correct, and appropriate outlook calendar, failing to complete reports accurately and on time, and failing to follow other procedures or directives given her concerning the performance of her work by her supervisor. *Id.*, Ex. 31. Jones never disciplined Hill for these issues because he resigned on July 8, 2006. Barnes testified she did not discipline Hill in part because Barnes had more serious matters to attend to, including the termination of Jones. Pl.s Resp. to Defs.' Mot. Summ. J., Ex.3 at 19.

On October 20, 2006, Hill was supposed to be present in a meeting involving all of the ACSIP staff under Barnes' supervision. Hill was not present and did not submit leave for her absence. Hill testified that she was "on-site" but not in the actual training. She testified she was socializing somewhere in the hotel during the meeting. Eventually, Barnes got Hill to turn in the required leave for her absence. Def'. Statement of Facts, ¶ 34. On November 27, 2006, Hill filed a travel reimbursement form for travel to Mt. Pine. In fact, Hill traveled to Hot Springs, a shorter distance than Mt. Pine. She explains that she could not make it to Mt. Pine because of child care problems and provided technical assistance over the phone to Mt. Pine School District personnel.

Barnes says she recommended Hill's termination "because of the earlier incidents resulting in disciplinary action demonstrating repetitive behavior from a previous probationary period's improvement plan, and because of the seriousness of knowingly falsifying a travel reimbursement document." She gave Hill the opportunity to resign, retire, or be terminated on December 1, 2006. *Id.*, Ex. 1. Hill was terminated and did not grieve her termination.

Defendants seek summary judgment on the basis that Hill's Title VII claim against the ADE is barred by the Eleventh Amendment and that she has insufficient evidence to establish any adverse employment actions were based on race, sex, or retaliation. Defendants move for summary judgment as to Hill's claims pursuant to 42 U.S.C. § 1983, arguing they are entitled to qualified immunity and Hill fails to state a claim for relief. Defendants also contend Hill is not entitled to punitive damages.

### Standard of Review

Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). As a prerequisite to summary judgment, a moving party must demonstrate "an absence of evidence to support the non-moving party's case." *Celotex Corp. v. Catrett,* 477 U.S. 317, 325 (1986). Once the moving party has properly supported its motion for summary judgment, the non-moving party must "do more than simply show there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586 (1986). The non-moving party may not rest on mere allegations or denials of her pleading but must "come forward with 'specific facts showing that there is a genuine issue for trial.'" *Id.* at 587 (quoting Fed.R.Civ.P. 56(e)).

"[A] genuine issue of material fact exists if: (1) there is a dispute of fact; (2) the disputed fact is material to the outcome of the case; and (3) the dispute is genuine, that is, a reasonable jury could return a verdict for either party." *RSBI Aerospace, Inc. v. Affiliated FM Ins. Co.,* 49 F.3d 399, 401

(8th Cir. 1995). The inferences to be drawn from the underlying facts must be viewed in the light most favorable to the party opposing the motion. *Matsushita,* 475 U.S. at 587 (citations omitted). Summary judgment should be cautiously granted in discrimination cases because such cases often depend on inferences rather than on direct evidence. *Crawford v. Runyon,* 37 F.3d 1338, 1341 (8th Cir. 1994). Further, summary judgment is particularly appropriate where an unresolved issue is primarily legal, rather than factual. *Mansker v. TMG Life Ins. Co.,* 54 F.3d 1322, 1326 (8th Cir. 1995).

### Discussion

Hill alleges she was reprimanded, denied employment opportunities, including promotions, and terminated because of race, gender, and retaliation in violation of Title VII and the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution.

**1.    Title VII Claim**

In her January 2006 EEOC charge, Hill claims she was denied promotions. She says she applied for a Standards[1] unit leader position and SIS/ACSIP unit leader position in November 2005 and was interviewed for both positions in December 2005. She applied for a Coordinator position in December 2005, and was interviewed on January 6, 2006. In her complaint, Hill alleges she was denied promotions after she filed her 2002 EEOC complaint and after she filed her 2006 EEOC complaint. She also claims she was terminated because of race, gender, and retaliation.

To prevail on a failure to promote claim based on race and/or gender discrimination, a plaintiff must show 1) she is a member of a protected group; 2) she was qualified for and applied

---

[1] One of the units within SIS is the Standards Assurance unit.

for a promotion for an available position; 3) she was rejected for that position; and 4) a similarly situated employee, outside the protected group, was promoted instead. *Dotson v. Delta Consol. Indus., Inc.,* 251 F.3d 780 (8th Cir. 2001). If the plaintiff establishes a *prima facie* case, the burden of production shifts to the employer to show a legitimate, non-discriminatory explanation for the adverse employment action. *Pope v. ESA Services, Inc.,* 406 F.3d 1001 (8th Cir. 2005).

> 'The burden to articulate a nondiscriminatory justification is not onerous, and the explanation need not be demonstrated by a preponderance of the evidence. Accordingly, the ultimate burden falls on [plaintiff] to produce evidence sufficient to create a genuine issue of material fact regarding whether ESA's proffered nondiscriminatory justifications are mere pretext for intentional discrimination.

*Id.* at 1007.

In her brief in support of her response to defendants' motion for summary judgment, Hill lists three positions she claims were awarded to white persons because of unlawful discrimination. The first is the unit leader vacancy filled by Jones. Prior to being hired to fill the position, Jones had been serving as the lead supervisor from mid-September 2005 through December 2005. Barnes, Dianna Julian, a white female, and Charity Smith, a black female, were members of the committee that interviewed Jones and Hill for the unit leader position. Barnes said Jones was selected over the other candidates, including Hill, because he was the most qualified for the job. She said Jones had ten years experience in the unit, had previous experiences serving as unit representative for the former unit leader and was also recommended by the former unit leader as the supervisor who would be the most effective in fulfilling the duties during the reorganization transition period, and he was unanimously recommended by the interviewing committee. Defs.' Statement of Facts, Ex. 1.

Hill attacks the credibility of Barnes' reasons, citing her deposition testimony in which Barnes said Jones' experience as lead supervisor would be a plus for him only if his interview went

well and how the other applicants did in their interviews. Hill also submits a copy of a page from an ADE directory published, according to Gail Morris, a co-worker, the day before Hill's interview, listing Jones as unit leader for ACSIP. This, Hill contends, shows Jones had already been chosen for the position and the interviews were a sham.

Defendants seek to strike that portion of Hill's affidavit in which she cites Morris as the source of information as to the publication date of the ADE directory. Hill never named Morris as a potential witness or submitted the directory page in response to discovery requests. Defendants also challenge as hearsay Hill's statement that Morris hold her the directory was published before Hill's interview. The Court finds defendants' motion to strike should be and is hereby granted. But, even if the Court considered that portion of Hill's affidavit and the submission, the Court finds Hill fails to provide any evidence to support a finding that the true reason behind Jones' promotion was race or gender discrimination.

Hill claims that defendants promoted Otistene Smith, a black female, to the position of coordinator of Chapter II even though Hill was more qualified. Hill fails to state a *prima facie* case of discrimination because Smith is not outside the protected group. Hill also claims defendants discriminated against her when they hired a less-qualified white woman, Rebecca Dalton, for the position of program support manager in the Division of Learning Services. Hill submits the resume and employment application for Dalton in support of her claim. Unlike Hill, Dalton had no prior experience with the ADE, and Hill asserts this fact establishes a *prima facie* case of race discrimination. Although defendants do not address this challenged employment decision in their pleadings, Hill says the defendants' stated reasons for failing to promote her are "that Dalton possessed superior qualifications and experience and that Plaintiff had disciplinary problems." Pl's.

Br. in Supp. of Resp. to Defs.' Mot. Summ. J., at 15.  She claims these reasons are not credible.

Even assuming she can establish a *prima facie* case, Hill cannot establish a genuine issue of material fact that the reasons asserted are a pretext for discrimination.  The facts are undisputed that Hill had disciplinary problems, and the fact that Dalton had not been employed by the ADE before is insufficient evidence to establish that she was less qualified for the position.  Hill has not presented evidence sufficient for a reasonable factfinder to infer that defendants' decision was motivated by discriminatory animus.  *See Fair v. Norris,* 480 F.3d 865, 869 (8th Cir. 2007).

As to her termination, Hill claims defendants' stated reasons were pretexual. Hill admits that she submitted a false travel reimbursement form on November 27, 2006, and was socializing rather than attending a meeting on October 26, 2006.  She argues, however, that she eventually submitted a leave slip as requested by Barnes regarding the meeting she did not attend, and that she should not have been terminated because of an eleven mile difference in travel between Hot Springs and Mt. Pine.

With regard to the disciplinary actions taken against her, Hill asserts that Barnes' predecessor, David Westmoreland, only required his supervisors to specify the location and date of an appointment on their calendars.  She contends that Barnes' and Jones' insistence that she include specifics such as who, what, when, where, and why with respect to meetings outside the office was unnecessary for them to perform their oversight role, and that white supervisors were not disciplined when they did not provide more detailed information on their calendars.   As proof, Hill submits exhibits purportedly of Outlook calendar entries made during the first three months of 2006 by some of her fellow white supervisors, showing their entries were no more descriptive than hers. Defendants move to strike those exhibits because they are not authenticated and were not turned

over during discovery. Defendants also point out that one of the supervisors Hill claims is white is actually black, and that Hill has no evidence that these supervisors were not disciplined or instructed to add more detail to their entries. The Court finds the evidence submitted by Hill allegedly showing similarly situated white co-workers were treated differently with respect to calendar entries should be struck from the record. Even if the Court considered the entries, the evidence is insufficient to raise a genuine issue of material fact that race, sex, or retaliation was the real reason for denial of promotions or termination.

Hill also argues she was unfairly disciplined regarding submitting requests for leave. Barnes testified that the policy is that an employee file for leave prior to taking the leave. She admitted that she often allowed employees to file for leave after the fact as long as the employees filled out the leave slip upon Barnes' request. Hill asserts she turned in forms once Barnes requested them. Hill notes that even though Barnes gave her until January 3, 2006 to turn in leave forms for November 22 and December 15, she completed the forms before the end of the year. She admits she was late in submitting another leave slip.

"[W]e repeatedly have noted 'the employment-discrimination laws have not vested in the federal courts the authority to sit as super-personnel departments reviewing the wisdom or fairness of the business judgments made by employers, except to the extent that those judgments involve intentional discrimination.'" *Gilbert v. Des Moines Area Cmty. Coll.*, 495 F.3d 906, 916 (8th Cir. 2007) (citations omitted). "Employers are free to make employment decisions based upon mistaken evaluations, personal conflicts between employees, or even unsound business practices." *Edmund v. MidAmerican Energy Co.,* 299 F.3d 679, 685-86 (8th Cir. 2002). Hill fails to submit sufficient

evidence to create an issue of fact as to the credibility of defendants' reasons for terminating her or for denying her promotions.

Hill also claims she was denied promotions and terminated in retaliation for filing EEOC charges. To meet her burden of establishing a *prima facie* case of discrimination, Hill must show that she engaged in statutorily protected activity, she suffered an adverse employment action, and there is a causal connection between her involvement in the protected activity and the adverse employment action that she suffered. *Brannum v. Missouri Dept of Corrections,* 518 F.3d 542, 547 (8th Cir. 2008). Generally, the Eighth Circuit requires more than a mere temporal connection in order to infer causation. *Recio v. Creighton Univ.*, 521 F.3d 934, 941 (8th Cir. 2008).

Hill filed an EEOC charge in 2002. In December 2005, she interviewed for the position filled by Jones. Barnes states she knew nothing about the 2002 EEOC charge until Hill filed her second EEOC charge in January 2006. Defs.' Statement of Facts, Ex. 1 at ¶ 28. Hill applied for the other two promotions in December 2005 and February 2006. She notes that Jones admitted in his deposition that Barnes sought his assistance in responding to the January 2006 EEOC charge, so the assumption is that defendants were aware of Hill's EEOC claims in January 2006. Hill asserts defendants hired Smith for the Chapter II coordinator position because Smith was "a less threatening employee," Pl's. Br. in Supp. Mot. Summ. J., at 13, and hired Dalton in February 2006 in retaliation for filing an EEOC charge less than two months before. Hill was terminated in December 2006, less than four months after she filed this lawsuit.

The Court finds Hill presents no evidence that defendants' reasons for failing to promote her or to terminate her were based upon retaliation. While the decision involving Dalton[2] was in close proximity to the filing of the EEOC charge, and her termination was in close proximity to the filing of her federal lawsuit, the timing by itself does not support a finding that defendants' reasons were pretextual.

Hill further claims defendants denied her access to meetings, travel outside the state, leadership roles, and forced her to work in isolation. She challenges the disciplinary actions taken against her, and asserts in her response to the motion for summary judgment that other, similarly situated supervisors in ACSIP who are not members of any protected group, were treated differently as to maintaining their calendars.

As decided previously, the Court finds the calendar pages submitted by Hill as an exhibit to her response to defendants' motion for summary judgment, have been struck from the record. Further, Hill submits no evidence to establish that any of these actions were adverse employment actions. *See Buettner v. Arch Coal Sales Co.,* 216 F.3d 707, 715 (8th Cir. 2000)(employment actions which do not result in changes in pay, benefits, seniority, or responsibility are insufficient to sustain a retaliation claim).

**2.   Equal Protection Claims Brought Pursuant to 42 U.S.C. § 1983**

Hill claims defendants violated her equal protection rights under the Fourteenth Amendment to the United States Constitution by discriminating against her on the basis of race and sex. Discrimination claims brought pursuant to § 1983 are analyzed under the same burden-shifting

---

[2]The Court finds no evidence in the record as to when the decision to hire Smith was made. The position was open for application from December 14, 2005 to December 29, 2005.

framework as Title VII claims. *Tipler v. Douglas County, Neb.,* 482 F.3d 1023, 1027 (8th Cir. 2007)(analysis similar when plaintiff alleges both Title VII and § 1983 claims based on a violation of equal protection); *Chambers v. Wynne Sch. Dist.,* 909 F.2d 1214 (8th Cir. 1990)(*McDonnell Douglas* test has been used to evaluate a plaintiff's *prima facie* showing of discrimination for both § 1981 and § 1983 claims).  Because the Court finds Hill fails to establish a genuine issue of material fact as to her claims of discrimination and retaliation under Title VII, her claims under § 1983 fail as well.[3]

## Conclusion

Because the Court finds Hill failed to produce competent evidence that defendants discriminated against her on the basis of race and/or gender or retaliated against her, the motion for summary judgment [docket entry 24] is granted.  Plaintiff's complaint is dismissed.  Judgment will be entered for defendants.

SO ORDERED this 3rd day of July 2008.

/s/Susan Webber Wright

UNITED STATES DISTRICT JUDGE

---

[3] Defendants assert they are entitled to qualified immunity. Qualified immunity protects "government officials performing discretionary functions ... from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. " *Harlow v. Fitzgerald,* 457 U.S. 800, 818 (1982).  A qualified immunity analysis involves two questions. First, do the facts demonstrate that the defendants' conduct caused a violation of Hill's statutory or constitutional rights.  *Tuggle v. Mangan,* 348 F.3d 714, 720 (8th Cir.2003). If the facts, viewed in a light most favorable to Hill are sufficient to show a violation of her statutory or constitutional rights, then the second question is asked: Was the right violated one clearly established at the time? *Id.* Because the Court finds Hill's discrimination and retaliation claims fail due to the lack of sufficient evidence that the employer's reasons for the adverse employment actions were pretextual, the Court need not address the second question. *See Clegg v. Arkansas Dep't of Corrections,* 496 F.3d 922, 931 (8th Cir. 2007).